# Clifton Heights Borough, Appellant, *v.* Thomas Kent Manufacturing Company.

*Railroads—Lateral railroads—Grade crossings—Municipal consent— Acts of May 5, 1832, P. L. 501 and June 7, 1901, P. L. 531—Injunction— Equity.*

A manufacturing corporation which has undertaken to construct a lateral railroad under the provisions of the Act of May 5, 1832, P. L. 501, has no right to lay its tracks across a public street at grade without the consent of the municipality.

The Act of June 7, 1901, P. L. 531, relating to the crossing of highways by railroads or of railroads by highways, and intended to regulate, alter and abolish grade crossings, applies to lateral railroads.

The act of 1901 applies to all crossings thereafter established, and the language of the act has reference to the time when a crossing is actually established on the ground, and ready for construction, or in fact constructed, and not to the time when a lateral railroad may have been authorized by a decree of the court under the Act of May 5, 1832, P. L. 501, to construct such a railroad. The general authority to construct a lateral railroad does not establish a crossing within the meaning of the act of 1901.

Argued March 16, 1908. Appeal, No. 348, Jan. T., 1907, by defendant, from decree of C. P. Delaware Co., Dec. T., 1900, No. 190, dismissing bill in equity in case of Clifton Heights Borough v. Thomas Kent Manufacturing Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court, and in a previous report of the case in 212 Pa. 117.

The court in an opinion by JOHNSON, P. J., dismissed the bill.

*Error assigned* was decree dismissing the bill.

*William I. Schaffer,* with him *Frank B. Rhodes,* for appellant.—Since the passage of the Act of June 7, 1901, P. L. 531, every grade crossing, whether of one railroad by another, or of a highway by a railroad, comes before the court with a heavy burden of proof upon it: Mifflinville Bridge, 206 Pa. 420.

Under the lateral railroad act the appellee has no right to cross at grade.

The defendant claiming exemption from the sweeping provisions of the act of 1901 must be able to point to the words specifically excepting a lateral railroad from its enactments.

The fact that the building of the road was commenced before the passage of the act of 1901, does not prevent the courts from forbidding a grade crossing where the crossing is attempted to be made after the passage of the act. The act is directed against all crossings hereafter established: Mifflin-

ville Bridge, 206 Pa. 420 ; Penna. R. R. Co. v. Bogert, 209 Pa. 589.

The anti-grade crossing acts will receive a liberal, not a technical, construction to effectuate their purpose—the abolition of grade crossings : B. & O. R. R. Co. v. Butler Pass. Ry. Co., 207 Pa. 406 ; Penna. R. R. Co. v. Bogert, 209 Pa. 589.

*Alex. Simpson, Jr.,* with him *Edward H. Hall,* for appellee.—The lateral railroad Act of May 5, 1832, P. L. 501, does not prevent a lateral railroad from crossing the highways at grade : Phila. & Baltimore Cent. R. R. Co. v. Upper Darby Twp., 202 Pa. 429 ; Port v. R. R. Co., 168 Pa. 19 ; Omaha, etc., R. R. Co. v. Severin, 30 Neb. 318 ; Gray v. R. R. Co., 37 Iowa, 119.

The Act of June 7, 1901, P. L. 531, does not apply to lateral railroads.

If the act of 1901, covers the case of lateral railroads it does not apply to those which were established, and the right to construct which was confirmed by the court, prior to the time when the act of 1901 was passed : Phila., etc., R. R. Co. v. Upper Darby Twp., 202 Pa. 429 ; Ligonier Valley R. R. Co. v. Latrobe Borough, 216 Pa. 221.

A lateral railroad is not required to obtain the consent of a borough to cross the highways thereof at grade in cases where the railroad does not longitudinally occupy the highway : Pittsburg v. R. R. Co., 205 Pa. 13 ; Phila., etc., R. R. Co. v. Upper Darby Twp., 20 2Pa. 429.

Appellant is estopped by its laches from now objecting to our right to build the lateral railroad at grade across Baltimore avenue : Com. v. Turnpike Co., 153 Pa. 47 ; Pa. Sch. Val. R. R. Co. v. Phila. & Reading R. R. Co., 160 Pa. 277 ; Potter v. Scranton Traction Co., 176 Pa. 271 ; Wenger v. Rohrer, 3 Pa. Superior Ct. 596.

OPINION BY MR. JUSTICE ELKIN, April 20, 1908 :

This is a bill in equity praying for an injunction to restrain the respondent company from constructing a railroad siding, later a lateral railroad, over certain streets of the borough at grade. When the case was here before on an appeal from a decree refusing a preliminary injunction, it was held, reversing the court below, that under the prayer of the supplemental

bill, such preliminary injunction should have been granted: Clifton Heights v. Manufacturing Company, 212 Pa. 117. The record was then ordered to be remitted to the court below, with direction to issue a preliminary injunction restraining the respondent, a manufacturing company, from constructing a lateral railroad at grade across a public street of the borough without its consent. Unless this record presents some new facts, or a different situation, the ruling in that case must control in the decision of the present proceeding. After the record was returned to the court below, the learned judge, sitting as a chancellor, referred it to a master to take testimony, find the facts and make report as to whether the injunction should be made permanent. The master, after a full hearing and having due regard to the weight of the testimony, found as a fact that there is no physical feature in the way of constructing an undergrade crossing at the disputed point; that such a crossing is reasonably practicable and would not be injurious to the respondent company in the operation of its plant, but would rather facilitate the transfer of coal and freight from the cars to the mills. Under these findings of fact the case is stronger against the appellee than when it was here before, and we can see no good reason why the injunction should not be continued.

It is argued for the appellee, with much force and ability, that the settled policy of the law which finds expression in the decisions of the courts and in statutory regulations dealing with grade crossings, has no application to a lateral railroad, and that this question was not fully considered when the case was here before on an appeal from a preliminary injunction. The question is now squarely raised, and it must be determined whether a manufacturing company, having availed itself of the provisions of the Act of May 5, 1832, P. L. 501, under which it had undertaken to construct a lateral railroad, has a right to lay its tracks over a public street at grade without municipal consent, which in the present case has not been obtained. Under the first of the five questions propounded in the argument of learned counsel for appellee the proposition is rather ingeniously stated to be whether the lateral railroad act prevents a lateral railroad from crossing a public street at grade. This proposition might be answered in the negative

without affecting the real questions involved here, which is, does the act either in express terms or by necessary implication, give a lateral railroad such a right? The question is not what the act prevents being done, but what it authorizes to be done. It is true the act does not say that a lateral railroad may not cross a street at grade, but what is more to the purpose, it does not say it may do so. Indeed, the language of section eight clearly shows the legislative intent to be that a lateral railroad shall not be so constructed as to obstruct or impede the free use of the highways by the public, and that when a public road is encroached upon or crossed by such a railroad, the rights of the public must be carefully guarded and the safety and convenience of the people be provided for, all of which is inconsistent with the contention that under the provisions of the act a lateral railroad may cross a public highway at will against the protest and without the consent of the municipal authorities.

Again, it is the opinion of this court, that the Act of June 7, 1901, P. L. 531, is broad enough in scope and purpose to apply to a lateral railroad crossing a public highway at grade. As indicated by its title, the act relates to railroad crossings of highways, and was intended to regulate, alter and abolish grade crossings. In the first section of the act the purpose is stated to be that all crossings, hereafter established, whether of highways by railroads or railroads by highways, shall be above or below the grade thereof. This language is sufficiently comprehensive to include all kinds of railroads, and since it is intended as a protection to life and property and is a safeguard against dangers to the traveling public, there does not seem to be any good reason why it should be given such a construction as to partially defeat the purpose of its enactment. The purpose of the act was to prevent the crossing of highways by railroads or of railroads by highways at grade. The dangers incident to the operation of a lateral railroad are similar in kind and may be in degree to the dangers incident to the operation of a steam railroad. The learned court below has made a careful analysis of many sections of the act of 1901 for the purpose of showing that its provisions relate to chartered companies for general railroad purposes enjoying the right of eminent domain. It is true that

many of the provisions of this act do relate to railroad companies, common carriers, incorporated as quasi public corporations, and this for the very good reason that the dangers to be avoided arise in most instances at grade crossings in the operation of steam railroads. It is equally true that the act does not in terms mention lateral railroads, and it is argued with much force that failure to name these roads is a casus omissus indicating an intention not to include them within the operation of the statute. However, it is not necessary that the act be given an interpretation at variance with the settled policy of the law relating to grade crossings, and the able argument of learned counsel has not convinced us that it should not apply to all kinds of railroads, lateral as well as steam. We therefore hold that the act of 1901 applies to lateral railroads.

The third proposition advanced by the appellee is that even conceding the act of 1901 applies to lateral railroads, it cannot be held to apply in a case where the right to construct was confirmed by the court prior to the time when the act went into effect. This position confuses the naked authority given to construct a lateral railroad with the actual construction of the crossing. The act of 1901 applies to all crossings hereafter established, and this language has reference to the time when the crossing is actually established on the ground and ready for construction, or in fact constructed, and not to the time when a lateral railroad may have been authorized by a decree of the court under the act of 1832 to construct such a railroad. The general authority to construct a lateral railroad does not establish a crossing within the meaning of the act of 1901.

The fourth point is also without merit. It has already been indicated that the act of 1832 did not give the right to appropriate the streets of a municipality to the private use of a lateral railroad, and it necessarily follows that if the statute did not give such power, the right to make such use of a public street can only be obtained by municipal consent, and without such consent the right does not exist. Nor do we think this is a case for the application of the doctrine of estoppel or laches.

Decree reversed, bill reinstated and the record remitted with direction that the injunction be made permanent.